# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FEDERAL DEPOSIT INSURANCE
CORPORATION, as successor for the
RESOLUTION TRUST CORPORATION,
as receiver for ABQ FEDERAL SAVINGS
BANK,

        Plaintiff,

v.                                         No. CIV 98-876M

WILLIS A. SMITH, JR., JANE B. SMITH,
CHARLOTTE A. SMITH and LA JOLLA
DEVELOPMENT CORP., a New Mexico
corporation,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      This case was filed by the Plaintiff as an instrument of the United States government in an attempt to collect five Stipulated Judgments entered against Defendants six years ago. The case comes before the Court at this time on Defendant's Motion for Summary Judgment, Defendants' Motion to Strike Affidavits and Plaintiff's Motion in the Alternative for Continu-ance to Permit Further Discovery. A Motion for Summary Judgment filed by the Plaintiff has been denied by a separate Order. As to all the pending motions, I resolve the issues in favor of Defendants and will enter a separate Judgment.

## <u>Jurisdiction and Venue</u>

      Both personal and subject matter jurisdiction are present. Plaintiff brings suit as a body corporate with the power to sue and be sued and as an agency of the United States. 12 U.S.C.

sec. 1819(a); sec.1819(b)(1). Plaintiff FDIC was established by Congress to insure the deposits of banks and savings associations which apply to and are accepted by FDIC for insurance benefits. Id. at sec.1811 and sec.1815. Plaintiff also accedes, pursuant to 12 U.S.C. sec.1441(m), to the interests of a prior body corporate and agency of the United States, the Resolution Trust Corporation (RTC).

Although the Complaint provides nothing to explain the caption of the case as Plaintiff has written it, it appears, surmising from what is provided generally by statute, that ABQ Federal Savings Bank was deemed a failed or closed savings institution and was taken over by RTC pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. 12 U.S.C. sec.1464(d), 1441a(b); 1821(d)(3). After RTC took receivership of ABQ Federal Savings Bank, it was authorized to collect its outstanding indebtedness, including that resulting from transactions with Defendants. Id. These collection efforts resulted in five prior suits against Defendants in which the five Stipulated Judgments at issue were entered. RTC's statutory authority now expired, FDIC is authorized to file a suit in its own name to enforce RTC interests; and all civil suits at law or in equity to which FDIC is a party are deemed to arise under the laws of the United States. Id. at sec.1819(b)(2)(A). Accordingly, a federal district court has subject matter jurisdiction over claims and counterclaims brought by and against the FDIC. Federal Deposit Insurance Corporation v. Hulsey, 22 F.3d 1472, 1486 (10th Cir. 1994); Homeland Stores, Inc. v. Resolution Trust Corporation, 17 F.3d 1269 (10th Cir. 1994), cert. denied 513 U.S. 928 (1994).

Venue is also proper. Defendants admit they are residents of Bernalillo County, New Mexico. All parties aver that the indebtedness which is subject of this suit results from a written Settlement Agreement entered into in Bernalillo County, subsequent to the filing of five federal

court actions in the District of New Mexico.

Plaintiff's Case

The Federal Deposit Insurance Corporation (FDIC) brings this action as a judgment creditor, as permitted by N. M. Stat. Ann. Sec. 53-19-35 (Limited Liability Companies) and N. M. Stat. Ann. sec. 56-10-17 and 18 (Transfers to Prefer Creditors). Plaintiff states in its Complaint that it is the holder of five Stipulated Judgments entered against Defendants Willis A. Smith Jr., Jane B. Smith and Charlotte A. Smith in an original aggregate amount of $891,206. Plaintiff seeks this amount plus interest, for a total well in excess of a million and a half dollars, against which Defendants have made no payments in satisfaction. To collect what it alleges is due and payable at this time, Plaintiff seeks a charging order against Defendants' interests in three limited liability companies, a writ of execution against Defendants' shares of a New Mexico corporation, and a writ of attachment on Defendants' proceeds from the sale of a condominium in California.

While the Complaint identifies Defendants' financial interests from which Plaintiff seeks to collect the monies it claims due, it does not identify the Plaintiff, the history of the Stipulated Judgments, the terms of the underlying Settlement Agreement which resulted in entry of the Stipulated Judgments, the nature of earlier attempts to collect the judgments or the bases of Plaintiff's present interest. Failure of the Complaint to explain pertinent events which followed entry of the judgments at issue, or in view of these events, to set out how it is Plaintiff assumes a right to collect against Defendants is total and glaring, to the point that it leaves a lingering question whether the absence of these allegations results from an oversight or an intentional decision--precipitated by the hope that significant transactions would never come to light.

3

Only after Defendants challenged the unstated assumptions underlying Plaintiff's action did Plaintiff provide any statement to explain its purported interest. First, Plaintiff states, that a 1994 transfer of all right and interest in the Stipulated Judgments to a third party was void *ab initio* because it was a "mistake." Plaintiff admits to the actual transfer of the judgments to a third party and admits that by the terms of the Settlement Agreement with Defendants the judgments should not have been transferred, but Plaintiff argues that the slate is wiped clean by operation of law and the transaction should be considered "undone." Secondly, Plaintiff explains that transfer of the judgments to a third party had no effect on Defendants' obligations or Plaintiff's right to bring an action in its own name, and thirdly, that the transfer and assignment did not constitute a sale or a transaction which invoked Defendants' right of first refusal as granted Defendant's by the underlying Settlement Agreement. Fourth, Plaintiff insists that even if the transfer to a third party "could somehow be construed as triggering the right of first refusal . . . ," the transaction did not constitute a prior breach of the Settlement Agreement and "was not of such a material nature as would excuse the Defendants from performance under the Settlement Agreement." Finally, Plaintiff states that it "believes" that legal interest in the five Stipulated Judgments transferred to Premier was reacquired at some point after 1995, so that Plaintiff holds sole interest in the judgments at this time.

Defendants' Case

Defendants admit the existence of the Stipulated Judgments in an amount exceeding that alleged in the Complaint, and Defendants admit the allegations of the Complaint with respect to Defendants' interests in three New Mexico limited liability companies and a general partnership which held an interest in a California condominium, and without agreeing as to the extent of their

interests, Defendants admit by their Answer to ownership of shares in La Jolla Development Corporation, a New Mexico corporation.

Defendants dispute, however, that Plaintiff holds a legal interest in the Stipulated Judgments or has any right to collect the aggregate principal. Defendants contend that when Plaintiff's predecessor transferred the judgments to a third party and failed to notify Defendants of their right to purchase the judgments prior to any transfer (as provided by the Settlement Agreement), Plaintiff materially breached the Settlement Agreement and rendered the judgments unenforceable.

Further, Defendants contend that the prior transfer of the judgments leaves Plaintiff without a present interest and without a clear right to bring suit. With regard to the latter, Defendants argue that Plaintiff has produced no competent evidence to indicate that after transfer of the judgments in 1994, it reacquired its prior rights or interest, and that this late in the case Plaintiff should be barred from producing any such evidence, if such evidence exists.

<u>Standard of Review</u>

Summary judgment is appropriate when a court, viewing the record in the light most favorable to the non-moving party, determines "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." <u>Thrasher v. B&B Chemical Co.</u>, 2 F.3d 995, 996 (10th Cir. 1993). The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the opposing case. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>Bacchus Industries v. Arvin Industries, Inc.</u>, 939 F. 2d 887, 891 (10th Cir. 1991). Once the moving party has met this burden, the opposing party must by affidavit, deposition, answers to interrogatories or admissions designate specific facts which remain at issue. <u>Celotex Corp. v. Catrett</u>, <u>supra</u> at 324.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation</u>, 475 U.S. 574, 587 (1986). Thus, where a party opposing summary judgment bears the burden of proof on an essential element of the case, but pursuant to Fed. R. Civ. P. 56 has failed to make a sufficient showing to establish that essential element, the party moving for summary judgment is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, <u>supra</u> at 322.

Interpretation of a written instrument and the determination of provisions and obligations contained in an unambiguous contract present questions of law. <u>Resolution Trust Corporation v. Mustang Partners</u>, 946 F. 2d 103, 104 (10th Cir. 1991); <u>FDIC v. Hulsey</u>, <u>supra</u> at 1491; <u>Nearburg v. Yates Petroleum Corporation</u>, 123 N.M. 526, 531, 943 P.2d 560 (Ct. App. 1997), *cert. denied* 123 N.M. 446, 942 P.2d 189 (1997). Likewise, whether or not a contractual provision is ambiguous on its face is a question of law. <u>Id.</u>; <u>Southwest Stationery & Bank Supply, Inc. v. Harris Corp.</u>, 624 F.2d 168, 170 (10th Cir. 1980).

Defendants' Motion to Strike Affidavits

Defendants' Motion to Strike is unnecessary, and therefore, denied. Allowing the affidavits in question to remain part of the record does not change the outcome of the case nor any of the separate conclusions; and I have relied on the affidavits only for limited purposes.

The affidavits make no difference to the ultimate disposition of this case, first, because whether or not transfer of the Stipulated Judgments from RTC to Premier Financial Services-West, L.P. constituted a sale is not a question of fact, but a question of law. The answer turns on the interpretation of written instruments. <u>Philadelphia Gear Corporation v. Federal Deposit</u>

Insurance Corporation, 751 F.2d 1131, 1138 (10th Cir.1984). Only if a contract is determined to be ambiguous does a district court resort to extrinsic evidence to ascertain the meaning of its terms (in which case the issue becomes a question of fact). Id. In this case, the Agreement of Limited Partnership, the Contribution Agreement and the Bill of Sale form are not ambiguous. Individually and collectively, Plaintiff's documents clearly demonstrate both a sale of the five Stipulated Judgments at the core of this case and a clear intent to exchange for value, and unsupported statements to the contrary which appear in Plaintiff's affidavits are immaterial.

In addition, Plaintiff's argument claiming that the Agreement of Limited Partnership, the Contribution Agreement, the Bill of Sale and the subsequent transfer of the five Stipulated Judgments are void by reason of a "mutual mistake" is an argument completely unsupported by facts, law or logic. Retaining or considering Plaintiff's affidavits as part of the record, therefore, does no harm to Defendants because the affidavits do nothing to establish Plaintiff's position. On their face the affidavits present only bare statements of fact and unwarranted conclusions of law and are insufficient to alter what is plainly stated in Plaintiff's own documents.

<u>Plaintiff's Motion in the Alternative</u>

I have also concluded that Plaintiff's Motion in the Alternative to stay the case and reopen discovery should be denied. What Plaintiff seeks to find, if discovery is reopened, is information pertinent to Plaintiff's right to bring suit in the first place. Should anything addi-tional exist and be retrievable, it can only be what should have been scrutinized long before suit was filed. Instead of establishing it had a legal interest in the Stipulated Judgments, however, and explaining the basis of its right to collect in the Complaint, Plaintiff chose to proceed on its own baseless assumptions. In order that neither Defendants nor a district court challenge those assumptions, Plaintiff appears

to have concealed or neglected material facts.

After Defendants contested both RTC's and FDIC's right to collect on the Stipulated Judgments, and Plaintiff could no longer avoid what it had attempted to forget, Plaintiff proposed to locate and examine what should have been a part of Plaintiff's records in the first place. This hardly justifies stopping litigation so late in the proceedings to backtrack for a business record necessary to Plaintiff's prima facie case. If Plaintiff has been caught unprepared or off guard, that can only be due to Plaintiff's lack of diligence and care.

Equally important, evidence of a sale of the Stipulated Judgments at issue is overwhelming. The fact that RTC's interest in the judgments was actually transferred to a limited partnership is undeniable. Considering what discovery (at Defendants' insistence) has produced to date, it is extremely improbable that Plaintiff could produce anything as a result of further discovery that could turn its situation around.

## Defendants' Motion for Summary Judgment

### Undisputed Facts

In 1991, five Stipulated Judgments for a combined total of $938, 001.57 terminated five separate cases against Defendants Willis A. Smith, Jr., Jane B. Smith and Charlotte A. Smith in the United States District Court for the District of New Mexico. (These five prior suits, previously "closed," have been formally consolidated with the present case. For administrative reasons, however, theses cases have not been classified as reopened and the files have remained with other closed cases.) Pursuant to 12 U.S.C. sec.1441(m)(1), Plaintiff stands in the position of its predecessor, RTC, in all the prior cases, as well as the present one.

The five earlier suits were closed after the parties signed a formal Settlement Agreement.

Pursuant to the terms of this Agreement, Defendants paid RTC fifty thousand dollars cash and issued Plaintiff a five hundred thousand dollar secured note payable to the order of the RTC. The note called for periodic cash payments and was secured by a life insurance policy, a mortgage and an assignment of future rents and leases. Defendants have made payment on the note as required by the written Settlement Agreement, but have made no payments to reduce the balance of the Stipulated Judgments or any interest, if interest is due.

While the parties disagree regarding the meaning of individual words and the significance and intent of the provision as a whole, the Settlement Agreement executed in 1991 specifically states that:

> In the event RTC finds a buyer for RTC's rights under the judgments, the Smiths shall have a right of first refusal to purchase such rights under the judgment for cash in the amount the buyer is willing to pay.

In 1994, RTC entered into an Agreement of Limited Partnership pursuant to the laws of Delaware which legally created a new limited partnership with a general partnership, Premier Financial Services, as the only general partner and RTC as the sole limited partner. The purpose of the new limited partnership was collection of RTC judgments and other receivables. Accordingly, RTC did "grant, bargain, sell, convey, transfer, assign and deliver" its judgments, deficiencies, "small balance assets" and charge-offs to the limited partnership.

Plaintiff admits to an actual transfer of the five Stipulated Judgments at issue to the limited partnership. According to Plaintiff's "Response in Opposition to Defendants' Motion for Summary Judgment" at p.7:

> In approximately June of 1995, it came to the attention of the RTC and Premier that there was some question of whether the Stipulated Judgments should have been

9

> included in the assets which were assigned to the Partner-
> ship. . . After some discussion about the appropriateness
> of inclusion of the Stipulated Judgments, the RTC and
> Premier agreed that the inclusion of these assets was a
> mistake and the Stipulated Judgments were returned to
> the RTC.

At page 10 of the same document, Plaintiff states: ". . . Defendants had information about the mistaken transfer of the Judgments to Premier early on in this litigation . . . ."

By argument and affidavits, Plaintiff now insists that the "assets which RTC contributed to the limited partnership were never 'sold' to the partnership for cash, but were simply the RTC's capital contribution to this newly formed entity in which it was a limited partner." The express terms of the Agreement of Limited Partnership, on the other hand, states that RTC did "grant, bargain, sell, convey, transfer, assign and deliver" its judgments and other receivables to the limited partnership as a capital contribution *in exchange for an interest* in the limited partner-ship. Whether by operation of law or by reason of the explicit language of the written instru-ments, the only way this exchange for value can be construed is as a sale, and both parties to the exchange expressly considered it a sale.

Without doubt, the limited partnership is a third party. It existed as a discrete legal entity apart from RTC over which RTC held little, if any control. 6 Del.Code Ann. sec.17-303(b) (1993 version). Consistent with the Uniform Limited Partnership Act, Delaware law provides that the interest of a limited partner in a limited partnership can mean no more than a right to share in and receive distributions from the profits and losses of the partnership. Neither the Uniform Limited Partnership Act nor Delaware law in force at the time of RTC's transactions permit the participation of a limited partner in the control or operation of the business. Id. at sec.17-303(b)

and 17-101(11).

Delaware law is also clear that once the Stipulated Judgments were transferred to the limited partnership, neither Plaintiff nor its predecessor held any interest in the judgments. "A partner has no interest in specific limited partnership property." Id. at sec. 17-701. On transfer, then, RTC surrendered its legal interest in and its title to the five Stipulated Judgments that are subject of the present case, and these became the property of the limited partnership, outside the control of RTC. Plaintiff's documents unequivocally support this reading of the factual situation and no other.

The Agreement of Limited Partnership provided that Premier Financial Service-West, L.P. would collect RTC judgments, notes and other obligations acquired by RTC in its capacity as receiver for failed institutions, would pay costs of collection, and would divide the proceeds with RTC on a pro rata basis. The Agreement of Limited Partnership also included the following provisions:

> . . . . the General Partner shall have full, exclusive and complete discretion to manage and control the business and affairs of the Partnership, to make all decisions affecting the business and affairs of the Partnership and to take all such actions as it deems necessary, appropriate, incidental or convenient to accomplish the business, purposes and objectives of the Partnership as set forth herein. Art. IV, Sec. 4.01(a).

> . . . . the Limited Partner shall not have any authority, right or power to bind the Partnership, or to manage or control, or to participate in the management of control of the business and affairs of the Partnership in any manner whatsoever. Id. at 4.01(b).

> . . . . the General Partner . . shall have the right, power and authority . . . .(h) only during the six (6)-month period immediately preceding the expiration of the Partnership Term, [to] sell all or a portion of the Assets at the time and on terms deter-

> mined by the General Partner, in its sole discretion, to any
> Person(s) other than the General Partner, a Direct Owner, an
> Investor or any Affiliate of any of the foregoing; Id. at 4.02.
>
> Title to the property and assets of the Partnership, whether real,
> personal or mixed, or tangible or intangible, shall be deemed to
> be owned by the Partnership as an entity, and no Partner, indi-
> vidually or collectively, shall have any ownership interest in such
> property or assets of the Partnership or any portion thereof. With-
> out limiting the foregoing, the Partnership shall be deemed to be
> the owner as such of all amounts collected on the Assets, including
> without limitation, all collection fees collected on the Assets. Title
> to any or all of the property or assets of the Partnership may be held
> in the name of the Partnership, or of one or more nominees of the
> Partnership, as the General Partner may determine. All property or
> assets of the Partnership shall be recorded as owned by the Partner-
> ship on its books and records, irrespective of the name in which legal
> title to such property or assets of the Partnership is held. Id. at 4.04.
>
> Upon the dissolution of the Partnership, the General Partner . . . shall
> wind up the affairs of and liquidate the Partnership. The Liquidator
> or the General Partner, as the case may be, shall liquidate the assets of
> the Partnership as is consistent with obtaining the fair value thereof
> and apply and distribute the proceeds . . . . Art. 13, Sec. 13.04.

Simultaneous to execution of the Agreement of Limited Partnership, RTC entered into a Contribution Agreement with Premier Financial Services-West, L.P. In the Contribution Agreement, dated December 30, 1993, Premier, "a Delaware limited partnership," is expressly termed the "Purchaser," and RTC, "an instrumentality of the United States of America," is expressly referred to as the "Seller." The Contribution Agreement in its third paragraph states that the Seller contributes its judgments, deficiencies and charge-offs to the Purchaser in consideration of a limited partnership in the Purchaser. At Section 1, the Agreement also states that the Purchaser "shall accept from the Seller, all of the Seller's right, title and interest in and to" the judgments, deficiencies and charge-offs. The Contribution Agreement further provides at Section 4 that

RTC's contribution to the limited partnership "shall be effected by the delivery by the Seller to the Purchaser of an Assignment and Bill of Sale . . . ." Accordingly, the form to be used as a bill of sale includes the statement:

> the receipt of which is hereby acknowledged, and intending to be legally bound hereunder, has bargained and sold, and by these presents does hereby grant, bargain, sell, convey, transfer, assign and deliver to the Purchaser, its successors and permitted assigns, each of the Assets . . . . TO HAVE AND TO HOLD the Assets unto the Purchaser, its successors and permitted assigns, to and for its and their own proper use and benefit forever.
>
> The Purchaser shall have the right to collect or receive the monies due under the Assets, and any part thereof, or to release or discharge said Assets. . . . Exhibit B to Contribution Agreement.

When it occurred to RTC that the Agreement of Limited Partnership and the transfer of its assets might violate the Settlement Agreement between RTC and Defendants in the present case, RTC and subsequently FDIC as it successor decided transfer of the Stipulated Judgments to the limited partnership was "not a sale," deemed the Agreement of Limited Partnership and/or the Contribution Agreement, as well as the actual transfer of the judgments all void *ab initio* by reason of "mutual mistake," and declared all of the matters between RTC and Premier "of no consequence" to the Stipulated Judgments at issue in this case.

Even though Plaintiff continues to assert this position, it provides no documents, business records or factual explanations to establish how the Agreement of Limited Partnership or RTC's contribution of the Stipulated Judgments to the limited partnership was "undone." Neither does Plaintiff allege with a certainty when or whether legal title was actually transferred back to RTC or FDIC. Plaintiff's affidavits and arguments profess only to a "belief" that a legal interest in the five Stipulated Judgments was withdrawn, returned or formally distributed from the limited

partnership to RTC or FDIC.

Plaintiff thus admits it has produced no documentation evidencing a current interest in the judgments at issue that would entitle Plaintiff to bring the present suit. Attempting to explain this anomaly by various descriptions of administrative and record-keeping difficulties, Plaintiff suggests only that permitting it to reopen discovery might lead to facts or documents or both. Neither additional facts nor additional documents, however, can bring Plaintiff's case to a circumstance that would permit enforcement of the judgments.

Even if the five judgments were in Premier's possession only for a period of years (early 1994 through the better part of 1995) and then legally returned to RTC or FDIC, Defendants were not informed that any transfer had taken place or that Premier held all right and interest in the judgments for any period of time. Plaintiff admits that at the time the Agreement of Limited Partnership and the Contribution Agreement were negotiated and executed, Defendants were not informed of RTC's transactions, and subsequently, were not informed of any transfer of the five judgments to the limited partnership. Plaintiff also admits Defendants were not given any opportunity to purchase the judgments for the amount RTC would have received from Premier, had Premier collected the full face amount of the judgments and charged the costs of collection to the limited partnership.

No assumption can be made, of course, that Premier would have collected the full face amount of the judgments, particularly since the undisputed evidence indicates the property that secured the judgments was worth less than the face amount due. In addition, by the terms of its Agreement of Limited Partnership, Premier had full authority to negotiate down from the face amount and to spend whatever it decided necessary towards collection. Eventually, RTC was to

receive a pro rata share of the proceeds pursuant to the terms of the Agreement of Limited

Partnership, but the precise cash amount that Defendants' Stipulated Judgments would have

credited to RTC's capital account with the limited partnership is impossible to determine at this

time.

It is fair to say that by reason of its agreement with Premier, the amount RTC stood to

recover for the Stipulated Judgments at issue more likely than not would have been very low.

Where the express and unmistakable point of the limited partnership was collection of RTC

judgments, it is obvious that RTC would be forced to substantially discount amounts to which it

might otherwise have been entitled as incentive to the general partner and the limited partnership

to undertake the effort and expenses of collection. As further evidence of this point, a letter dated

October 5, 1995, from RTC to Premier states:

> In March, 1994, the Denver RTC office sold to the
> Partnership, the five Judgments, in consideration for
> Premier's contribution payment as provided for in
> its JDC Contribution Agreement. . . . .
>
> There is nothing in the documents we received from
> the Denver RTC office to confirm that the Smiths
> were given the opportunity to purchase RTC's judg-
> ment rights before the Judgments were transferred to
> Premier. Given the fact the contribution amount paid
> by Premier for the assets was very small, I suspect
> the Smiths were not given the opportunity to exercise
> the right of first refusal. If that is true, it was a mistake
> by the Denver RTC office which has caused the RTC
> to breach the terms of the Agreement, and immediate
> steps must be taken by RTC and Premier to have the
> five Judgments removed from the JDC partnership and
> returned to RTC. Exhibit B to the Affidavit of Willis A.
> Smith, filed with Defendants' Motion for Summary
> Judgment.

## Interpretation of Plaintiff's Documents

Neither party argues that the Settlement Agreement, the Agreement of Limited Partnership or the Contribution Agreement are ambiguous; and all of these writings and all of the provisions at issue are clearly not ambiguous. Plaintiff actually argues only the provision of the Settlement Agreement that provides Defendants' right of first refusal should RTC sell the Stipulated Judgments at issue, and as to this provision, Plaintiff contends only that it did not apply. Plaintiff attempts to avoid the plain meaning of this and other relevant provisions by bald assertions of fact that are both implausible and inconsistent with facts clearly established in the record. Plaintiff's unadorned declaration that transfer of the Stipulated Judgments to Premier was "not a sale" is only one example. That Plaintiff did not "find" a buyer as the right of first refusal requires is another. Plaintiff makes these arguments despite it own abundant use of language to the contrary and the absence of any law that allows RTC to revise how it characterizes its transactions.

Plaintiff's documents, and not its later statements, then, are the only persuasive evidence for several reasons. For one, all of the documents Plaintiff submits regarding its transactions with Premier were most certainly written and executed under circumstances which must have provided RTC unending sources of legal advice. That RTC utilized legal advice in devising and implementing its scheme for collection is the only reasonable inference, and this inference is supported not only by RTC's status as an agency of the United States government, but also by the complexity of both the transactions and the required documents. Nevertheless, as another example of Plaintiff's use of unsupported factual declarations and legal conclusions, Plaintiff terms RTC's written documents and its transaction with Premier "a mutual mistake."

I find Plaintiff's several arguments stilted and cursory. They lack any semblance of plausibility. Plaintiff attempts to subvert the legal consequence of terms such as "grant, bargain, sell, convey, transfer, assign" by more than one impossible route: RTC and Premier "undid" "the deal"and therefore whatever went on between RTC and Premier is of no consequence; the parties "mutual mistake" means the transactions between RTC and Premier are void and never happened; and even if transfer to Premier breached the Settlement Agreement with Defendants, the breach was not material. All of these propositions are true, according to Plaintiff's arguments, for no other reason than Plaintiff has declared them to be true. In all regards, Plaintiff presents nothing other than the situation as Plaintiff needs it to be. Certainly, Plaintiff presents no law to establish its propositions.

At oral argument, Plaintiff's counsel stated that an additional reason the case could not be decided on summary judgment was the existence of "serious differences" in the parties' intent at the time they executed the Settlement Agreement. Yet, whatever intent existed on either side in 1991 no longer matters. "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 Corbin on Contracts at sec. 573.

The language of the Settlement Agreement executed to close the five prior cases is plain and clear. By its express terms, the Settlement Agreement stands as a complete expression of the agreement made between the parties and I do not find any of its provisions subject to differing meanings. I am therefore precluded from accepting extrinsic evidence of what the parties intended

prior to or at the time of their writing and neither the possibility of such evidence nor Plaintiff's

assertion that it intended something other than what is stated in the writing can be the basis for

taking the case to trial. Resolution Trust Corporation v. Mustang Partners, supra; FDIC v.

Hulsey, supra at 1491; Nearburg v. Yates Petroleum Corporation, supra; Southwest Stationery &

Bank Supply, Inc. v. Harris Corp., supra. All of Plaintiff's attempts to save its case thus fail.

Plaintiff's Arguments Opposing Summary Judgment

Plaintiff states repeatedly that the Stipulated Judgments at issue were legally returned from

Premier to RTC or to FDIC. What Plaintiff presents, however, only indicates Plaintiff's hope that

this is the fact. Plaintiff presents absolutely nothing in documentation or business records and

nothing in the Agreement of Limited Partnership or the Delaware Limited Partnership Act gives a

limited partner unilateral power to withdraw a portion of its capital contribution. According to

Delaware law, such a transaction is not to be presumed: ". . . . a partner, regardless of the nature

of his contribution, has no right to demand and receive any distribution from a limited partnership

in any form other than cash." Del.Code Ann., supra at sec.17-605. "A partner has no interest in

specific limited partnership property." Id. at sec. 17-701.

Only one inference is reasonable. If RTC extracted the five Stipulated Judgments at issue

from its contribution to the limited partnership by agreement of the general partner, RTC's

partnership capital account, as well as other records of the limited partnership (including consent

of the general partner to the change), would have required a writing that reasonably should have

been supplied to RTC at the time the contribution was withdrawn. Just as a Contribution

Agreement and Bill of Sale were provided to the limited partnership at the time of the capital

contribution and the transfer of the judgments, a transfer back could only be accomplished by a

18

written and recorded business record that by any standard should have been retained. Why such documentation did not accompany RTC's file to Plaintiff as its successor is more than puzzling. In any event, a present legal interest in the judgments at issue is an element of Plaintiff's case which Plaintiff has failed to establish.

Surmising that the legal necessity of a business record might infer its existence, there is nevertheless insufficient reason to stay the case at this point and wait to see if Plaintiff can find a record. From facts which are undisputed, I have determined that RTC's transfer of the Stipulated Judgments to Premier for value, without first allowing Defendants to purchase the judgments, constitutes a material breach of the Settlement Agreement; and Plaintiff's prior breach defeats its case even if Plaintiff were to locate documentation of a current legal interest in the judgments. In addition, I reiterate my concern (which is the second reason for denying Plaintiff's motion to reopen discovery) that the matter goes to Plaintiff's decision to file suit and the requisite proof of a legal and identifiable interest should have been secured and pled in the Complaint long before Defendants raised the issue.

Besides contending the "fact" that transfer of the Stipulated Judgments to Premier was "undone," Plaintiff also argues that it never occurred. Plaintiff reasons that the agreement to transfer resulted from a "mutual mistake" of fact that voids the entirety of the transaction. No law supports this theory. Plaintiff cites New Mexico case law, as well as the Restatement of Contracts, to establish what is beside the point. The issue in this case is not the consequences of an ill-begotten contract as between parties to that contract; and Plaintiff presents neither any law that addresses the consequences to third persons not a party to the contract nor any facts which might specify or lend credence to the supposed mistake.

It is clear that Plaintiff's claim of a mistake does not go to the Settlement Agreement. Other than that, it is not clear precisely what Plaintiff terms the "mistake." The RTC letter dated October 5, 1995, cites the "mistake" as the inclusion of the five Stipulated Judgments in the Contribution Agreement and their transfer by a Bill of Sale. If this is the mistake to which Plaintiff refers, it is a unilateral mistake (as the same letter demonstrates) that would not void the Agreement of Limited Partnership, the Contribution Agreement or the contribution. If this is what Plaintiff argues should void the contribution, Plaintiff proffers only a spurious argument for no other purpose than to excuse its own carelessness.

Both RTC and FDIC, as instrumentalities of the United States, are poorly positioned to make a case that rests on failure to read their own Settlement Agreement. Other than poor judgment, this can only be characterized as negligent. As Corbin on Contracts suggests, a party that acts with such negligence is not to be freed from his error, but "must suffer the consequences of his 'folly.'" Id. at sec 607.

Looking at everything Plaintiff puts forward, there is no evidence of a mistake that could render RTC's hasty and ill-advised transaction void. Certainly, there is nothing to suggest a mistake between Plaintiff or Plaintiff's predecessor and Premier or Premier's general partner with regards to the identity of the parties, the intent of the parties, the subject matter of the Agreement of Limited Partnership or the Contribution Agreement. There is no mistake as to the existence of the judgments and other receivables RTC intended to invest as its limited partner-ship capital contribution and RTC had legal right and title to the judgments it promised to transfer. Both parties were capable of performing as agreed. There was also no mistake in attributing a value to RTC's contribution of the five Stipulated Judgments. An agreed formula for the amount to be

paid RTC after collection is a principal component of the Agreement of Limited Partnership. In addition, a mistake in valuation does not render a contract *void ab initio*, and "practically never" does it justify recission. Id. at sec. 599; sec. 605.

Only if the situation could be reduced to no "meeting of the minds" might Plaintiff be able to argue a mutual mistake. Id. at sec.599. Yet, everything suggests only the opposite. Both parties to the Agreement of Limited Partnership accomplished precisely what they intended to accomplish and received from the bargain exactly as they expected to receive. Plaintiff's documents, individually and collectively, can be read no other way. Even if Plaintiff proffered the argument that RTC was mistaken in its belief that it could contribute the five judgments at issue without legal implication and contributed the judgments in error, the mistake is not mutual. The contract remains in full force and effect. Id. at sec. 599. The law "holds one party bound even though he did not so intend, in order to protect the other against disappointment and loss. Id.

It appears that RTC did not need to contribute anything to the limited partnership. "A person may be admitted to a limited partnership as a limited partner of the limited partnership and may receive a partnership interest in the limited partnership without making a contribution or being obligated to make a contribution to the limited partnership." Del. Code Ann., supra at 17-301(c). Yet, its extraordinary arrangement with Premier, as evidenced by its own documents, indicates a clear intent to contribute all of RTC judgments to the limited partnership in exchange for an interest in the partnership. Regardless of whether, in hindsight, RTC regrets its contribution of the judgment at issue or the contribution is to be regarded as negligence or poor judgment or the product of exceedingly bad legal advice, it cannot constitute the "mistake of fact" that voids either the underlying agreement to contribute or the actual transfer of the five Stipulated

Judgments to Premier.

Plaintiff also argues that it did not "find a buyer," for its rights under the judgments. The record is clear and unequivocal, however, that RTC used the Stipulated Judgments at issue, as well as countless others, *as consideration* to *purchase* an interest in a limited partnership which was a legal entity separate and apart from itself and over which it had little, if any, control. This is not any different in substance than selling the judgments to a collection agency and postponing the full payment due the seller until collection had been completed. The Uniform Limited Partnership Act, at the time enacted as the law of Delaware at Del. Code Ann., <u>supra</u> at. sec. 17-101 *et seq.*, states at subsection 17-101(2):

> Contribution' means any cash, property, services
> rendered or a promissory note or other obligation to
> contribute cash or property or to perform services,
> which a partner contributes to a limited partnership
> in his capacity as a partner.

Plaintiff's argument is thus pointless. If Plaintiff did not "find" a buyer, it created one. It was of clear mind to transfer *all* of its "right, title and interest" to specifically identified property for value. Plaintiff presents no basis for its insistence that the transaction did not invoke Defendants' right to notice of a pending sale and first right to purchase for an equivalent value. The provision, after all, should be interpreted against Plaintiff, not simply because it specifically would have worked to Plaintiff's benefit by providing an immediate dollar amount without any expenses for collection, but because the law requires that the provision be construed against the Plaintiff.

RTC argues that at all times it maintained an "interest" in the Stipulated Judgments and therefore no "transfer" of interest took place. Plaintiff's position is belied by the plain language of

the Agreement of Limited Partnership, the Contribution Agreement, and Delaware law in force at the time. "'Partnership interest' means a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." 6 Del. C. sec. 17-101(11). The only interest RTC had after its sale of the judgments to Premier was a right to be compensated in its Capital Account for a pro rata share of the assets transferred.

Transfer of the Stipulated Judgments was admittedly undertaken without notice to Defendants, and the record leaves no doubt that neither RTC nor FDIC allowed Defendants an opportunity to purchase the judgments prior to their transfer. Plaintiff's argument here is to insist that if this constituted a breach of the Settlement Agreement, the breach is not material. Again, Plaintiff fails to provide facts or law to support its assertions.

The issue of materiality of the breach must be determined by law of the State where the contract was made, in this case New Mexico. <u>FDIC v. Hulsey</u>, <u>supra</u> at 1492. New Mexico defines a breach as material if it is "so central to the parties' agreement that it defeated an essential purpose of the contract." <u>Famiglietta v. Ivie-Miller Enterprises, Inc.</u>, 126 N.M. 69, 966 P.2d 777, 782 (Ct. App.1998), <i>cert. denied</i> 126 N.M. 532, 972 P.2d 351 (1998). The materiality of a breach is a question of fact. <u>Id</u>. ". . . [A] material breach 'is one which touches the fundamental prupose of the contract and defeats the object of the parties in entering into the contract.'" <u>Id</u>., citing <u>Ervin Constr. Co. v. Van Orden</u>, 125 Idaho 695, 874 P.2d 506, 510 (1993).

"In interpreting a contract, the court must consider the contract as a whole and give significance to each part." <u>Nearburg v. Yates Petroleum Corp.</u>, <u>supra</u> at P. 2d 569. A right of first refusal is not an extraordinary contractual provision. In this case, the provision is neither ambiguous nor obscure. It stands as a customary and reasonable part of an agreement which

focused solely on repayment of indebtedness.

The Settlement Agreement was negotiated and bargained at arms' length. The parties agreed on an amount to be paid that was less than the face amount of the notes due and the least amount acceptable to clear the debt, and RTC received in exchange the opportunity to clear the indebtedness from its books and collect at the earliest possible time as much as practicable under the circumstances. If RTC were to change its mind regarding the lowest acceptable amount, Defendants were entitled by the agreement to an opportunity to pay the lesser amount. In this, the express terms of the Settlement Agreement created a justifiable expectation. This expectation does nothing to diminish RTC's position. Defendant must pay the amount RTC would have received if it sold to a third party and the debt is cleared regardless of who clears it. On the other hand, if Defendants are deprived of the opportunity to pay a lesser amount, in this case what appears to be a substantially lesser amount, Defendants are certainly deprived of the benefit of their bargain. The right of first refusal is therefore a material component of the parties' agreement. "In the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot make a new contract for the parties." Id. at 568.

In determining the materiality of a breach, New Mexico law relies heavily on the Restatement (Second) of Contracts. Famiglietta v. Ivie-Miller Enterprises, Inc., supra.

> The Restatement also provides a useful framework for analyzing whether a breach of contract is material. In particular, the Restatement sets forth five factors that courts should consider when deciding the materiality of a breach of contract. . . . One factor to examine is the extent to which the injured party will be deprived of the benefit he or she reasonably expected to receive from the contract. Another factor considers the extent to which the breaching party will suffer for-

> feiture if the breach is deemed material. Courts should
> also explore whether the injured party can be adequate-
> ly compensated in damages for the breach. A fourth
> factor focuses on the likelihood that the breaching party
> will cure his of her failure to perform under the con-
> tract. And the fifth factor evaluates whether the breach-
> in party's conduct comported with the standards of
> good faith and fair dealing. Id.

The problem with the breach in the present case is that Defendants lost the opportunity to clear their indebtedness and the liens against their property at the earliest possible time for the lowest amount RTC or FDIC would accept. Defendants were not only deprived of the benefit of their bargain, but deprived of a benefit that cannot be restored. This is particularly true because it is impossible to determine what from what Plaintiff provides or from the terms of the Agreement of Limited Partnership or the Contribution Agreement what amount was credited to RTC's limited partnership Capital Account for the contribution of the five Stipulated Judgments or what amount would have been paid to RTC after prolonged operation of the limited partnership and its incurring of collection costs.

Defendant Willis A. Smith avers that given the opportunity to clear the debt with a substantially reduced lump sum payment he would have done so. As RTC's letter of October, 1995, points out, this is the only reasonable inference. Defendants need not prove that they were damaged by Plaintiff's breach of the Settlement Agreement. It is enough that they were deprived of the benefits of their contract.

Finally, and without resolving at what point in this litigation Defendants were informed by Plaintiff of RTC's transactions with Premier, both Plaintiff and Plaintiff's predecessor breached their duty of good faith and fair dealing by failing to disclose the transactions prior to or, at a

minimum, concurrent with filing of the present action. "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Gilmore v. Duderstadt, 125 N.M. 330, 961 P.2d 175 (Ct. App. 1998), citing Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) and Restatement, supra at sec. 205. "The implied covenant of good faith and fair dealing 'requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." Gilmore v. Duderstadt, supra at P.2d 181-182. All of the events which later came to light were directly relevant to Plaintiff's action to enforce the judgments and rather than Plaintiff making hopeful assumptions and hiding the underlying facts, Plaintiff should have fully disclosed in the Complaint and allowed the judicial process to reach necessary legal conclusions.

### 5. Enforcing the Stipulated Judgments

"The law is well-settled that a party to a contract cannot claim its benefits where he is the first to violate its terms." Western Plains Service Corp. v. Ponderosa Developments Corp., 769 F.2d 654, 656 (10th Cir. 1985), citing Navato v. Sletten, 560 F.2d 340 (8th Cir. 1977). Where a party breaches a material term of a contract, and the breach remains uncured, that party cannot force another party to the contract to perform its obligations. Famiglietta v. Ivie-Miller Enterprises, Inc., supra at P.2d 780; Gilmore v. Duderstadt, supra.

Considering all of the foregoing, I find and conclude that Plaintiff cannot enforce the five Stipulated Judgments and should be denied the relief it seeks by this action. This result very well provides Defendants with a windfull. Being unable to establish what RTC received on sale and transfer of the Stipulated Judgments to Premier, it is impossible to say what amount Defendants are saved by the present determinations. Plaintiff's mistakes, however, and those of its

predecessor in interest, RTC, are so pervasive and substantial that I can come to no other outcome. Nothing in the record of this case supports the Plaintiff's right to collect the Judgments at issue.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is granted, Defendants' Motion to Strike affidavits is denied; and Plaintiff's Motion in the Alternative for Continuance to Permit Further Discovery is denied; and

IT IS FURTHER ORDERED that a final Judgment enter for Defendants; Plaintiff's claims are to be dismissed in their entirety with prejudice.

_____
SENIOR UNITED STATES JUDGE